## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARLOS COLON, )
                              )
       Plaintiff                )       Case No. 1:20-cv-00036 (ERIE)
                              )
vs.                             )
                              )       HON. RICHARD A. LANZILLO
ERIC ANGLIKOWSKI, JOHN WETZEL, )   UNITED STATES MAGISTRATE JUDGE
MARK CAPOZZA, DEBRA           )
HAWKINBERRY, MELANIE NAGY,      )
ADAM KNEPPER, SCOTT RIDDLE,      )       MEMORANDUM OPINION
SETH ERICKSON, MICHAEL CLARK,   )       ON DEFENDANTS' MOTION
DAVID RADZIEWICS, and          )       TO DISMISS (ECF NO. 41)
TRICIA BASHOR,                )
                              )
       Defendants            )

I.       Background and Procedural Posture

Plaintiff Carlos Colon (Colon), proceeding *pro se*, commenced this civil rights action against ten employees of the Pennsylvania Department of Corrections (Defendants), all of whom worked at the State Correctional Institution at Albion, where Colon was previously incarcerated.[1] *See* ECF No. 15 (Complaint). His original Complaint alleged that one of the defendants, Corrections Officer Anglikowski, sexually assaulted and harassed him during his incarceration and that the other defendants were somehow complicit in or responsible for Anglikowski's misconduct. *Id.*

In response to Colon's Complaint, the Defendants filed a Motion for More Definite Statement pursuant to Federal Rules of Civil Procedure 8 and 10. *See* ECF No. 29, ¶ 3. Because the Complaint did not disclose the factual basis underlying Colon's claims against any defendant other than Anglikowski, the Court granted the Defendants' motion and ordered Colon to file an Amended Complaint. ECF No. 32. Colon complied with that order and filed an Amended Complaint. ECF

---

[1] Colon is presently incarcerated at SCI-Fayette.

No. 38 (Amended Complaint). Thereafter, Defendants filed the pending Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and a supporting brief. ECF Nos. 41, 42. Colon has filed a Response in opposition to the motion. ECF No. 46. All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636. Defendants' motion is ripe for disposition.

## II.     Standard and Scope of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902,

906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), the Court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A court may take judicial notice of documents filed in other court proceedings because they are matters of public record. *Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

Finally, because Colon is representing himself, the allegations in the Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel.*

*Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Thus, the Court may consider facts and make inferences where it is appropriate. But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted). *See also Baez v. Mooney*, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

III.   Discussion and Analysis

    A.    Colon's Factual Allegations and Claims[2]

Colon's Amended Complaint is a 28-page verified pleading. An amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Colon's amended pleading includes no such incorporation and therefore is the operative pleading under consideration.

Generally, Colon claims he was deprived of his "Federal Constitutional Rights as named by the 5th, 8th, and 14th Amendments, namely his rights to due process and freedom from cruel and unusual punishment and though unprovable at this time sexual abuse and sexual harassment at the hands of correctional staff." ECF No. 38, ¶ 90. The claims against all defendants appear to arise out of, or relate to, an incident of alleged sexual abuse by Anglikowski during a body search on

---

[2] Colon has not organized his Amended Complaint into counts or specified which Defendants are the subject of each of his claims. Consistent with its obligation to construe Colon's *pro se* pleading liberally, the Court has attempted to extrapolate this information from a generous reading of the Amended Complaint. The Court notes, however, that notwithstanding his pro se status, Colon—like any litigant—must allege facts sufficient to state a claim as to each defendant. *See, e.g., Brandt v. Thuring*, 2019 WL 1418125, at *4 (D.N.J. Mar. 29, 2019). *See also Hamilton v. Jamieson*, 355 F. Supp. 290, 298 (E.D. Pa. 1973) ("We are not required to stretch our imagination to manufacture allegations to supplement the complaint ...."); *Cassell v. Cty. of Montgomery*, 2017 WL 2672653, at *3 (E.D Pa. Jun. 20, 2017) ("pro se litigants must nevertheless adhere to basic pleading requirements"); *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)("[T]here is no duty [on the part] of the trial court or appellate court to create a claim which appellant has not spelled out in his pleading.").

May 18, 2018, and alleged sexually harassing comments Anglikowski made to Colon after the incident.

According to the Amended Complaint, on May 18, 2018, Colon was "singled out by COI Anglikowski while in a re-routed inmate movement." *Id.*, ¶ 4(A). Anglikowski told Colon to "assume the position, which refers in common prison lingo (vernacular) to empty all pocket[s] and spread arms and legs in preparation for a body search." *Id.*, ¶ 4(C). Anglikowski then commenced a body search on Colon that "became abusive and finally intrusive as he stopped patting me down and then started rubbing me." *Id.*, ¶ 4(C)-(D). Specifically, Anglikowski "placed his fingers and thumbs of both hand[s] within the area of my gluteus maximus muscles (cheeks) on my posterior (buttoks) (sic) in an unprofessional manner." *Id.*, ¶ 4(E). Upon returning to his housing unit, Colon reported the incident on the Prison Rape Elimination Act (PREA) hotline. After Colon submitted his PREA report, Anglikowski began to verbally harass Colon with comments such as "can't we just get along," "lookin' good," "I'm gonna get some of that," and "hey baby boy." *Id.*, ¶ 6 (A)-(D).

On July 12, 2018, while Colon was in line for medication, Anglikowski again singled him out for questioning. *Id.*, ¶ 7. Anglikowski attempted to provoke an argument about Colon's work schedule, and then terminated the conversation, telling Colon to "drive safe sexy." *Id.*, ¶¶ 10, 15. Colon also reported this incident on the PREA hotline and sent a letter to the "BCI/PREA coordinator." *Id.*, ¶ 16.

On July 25, 2018, after meeting with counselors and the institution's employment officer, Colon met with Lt. Barner and Ms. Cheek. *Id.*, ¶ 29. Colon was asked to "sign off" on his previously filed grievances "with the condition that CO Anglikowski is moved off his post." *Id.* Later that day and despite the separation agreement, Colon encountered Anglikowski in the west yard of the prison but did not enter the west yard "out of fear and anxiety." *Id.*, ¶ 30. Colon encountered Anglikowski again in the prison yard on August 18, 2018. *Id.*, ¶ 35. While reporting

for work on September 23, 2018, Colon encountered Anglikowski, who "continued to stare at and attempted to provoke a response" from Colon. *Id.*, ¶ 37. Colon did not report to work and instead returned to his housing unit "out of fear." *Id.*

On October 24, 2018, Colon met with Defendant Bashor, the "appointed PREA compliance [manager]," about CO Anglikowski and the ongoing sexual harassment and retaliation Colon was experiencing. *Id.*, ¶ 43. Colon contends Bashor did nothing. *Id.*, ¶¶ 48-55. Colon then contends he was retaliated against by being put in a "more restrictive housing condition" before being transferred to another institution. *Id.*, ¶ 68.

Defendant Nagy evaluated Colon upon his arrived at SCI-Fayette in April of 2019. *Id.*, ¶¶ 69, 71. Nagy removed Colon's "low security status," "raised it ... to a level 4," "removed [Colon's] work privilege," and "implaced (sic) a H-code without a proper nor accurate evaluation." *Id.*, ¶ 69. The Amended Complaint states that Defendants Erickson and Knepper agreed with these changes. *Id.*, ¶ 74. Colon notified Defendant Hawkenberry, the PREA compliance manager at SCI-Fayette, of these changes to his status on April 30, 2019. *Id.*, ¶ 80. Colon claims Hawkinberry failed to investigate the "sexually related motivation for my custody level increase." *Id.*, ¶ 83. The Amended Complaint also states that Defendant Capozza, SCI-Fayette's Superintendent, failed to "rectify or investigate his subordinate's behavior." *Id.*, ¶ 84.

B.     The Claims Against Defendant Anglikowski

Colon appears to assert two claims against Corrections Officer Anglikowski. First, Colon alleges that Anglikowski sexually assaulted him during the May 18, 2018 body search and thereafter subjected him to comments that constituted sexual harassment in violation of his rights under the Eighth Amendment. *See* ECF No. 38, ¶ 4(E). Second, the Amended Complaint appears to allege that Colon retaliated against him for filing of a PREA complaint in violation of his First Amendment rights. *See* ECF No. 38, ¶6.

6

1.     The Amended Complaint Fails to State an Eighth Amendment Sexual
       Assault/Harassment Claim Against Anglikowski.

The sexual abuse of an inmate by prison officials violates the Eighth Amendment's

prohibition against cruel and unusual punishment. *Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018).

Colon alleges that Defendant Anglikowski sexually assaulted him during the May 18, 2018 body

search by inappropriately touching his buttocks. ECF No. 38, ¶ 4. Colon also alleges that

Anglikowski later made several statements to him that constituted ongoing sexual harassment.

These statements included "Cant' we just get along?," "looking good," "I'm gonna get some of

that," and "hey baby boy." ECF No. 38, ¶ 6. On July 26, 2018, more than two months after the

body search, Anglikowski also told him to "drive safe sexy." *Id.*, ¶ 15. In moving for dismissal,

Anglikowski argues that neither the physical contact nor the verbal comments alleged by Colon is

serious enough to implicate the Eighth Amendment. *See* ECF No. 42, p. 7.

In evaluating whether conduct rises to the level of an Eighth Amendment violation, the

Court of Appeals for the Third Circuit adopted an analysis that focuses on both subjective and

objective components. *Ricks*, 891 F.3d. at 475. To be actionable, the Court explained, "the incident

must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must

have a culpable state of mind." *Id.* at 475. Under this analysis, even "a single incident, if sufficiently

serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious

incidents." *Id.* at 477. Examples of conduct sufficient to satisfy the first component of the analysis

include "sexualized fondling, coerced sexual activity, combinations of ongoing harassment and

abuse, and exchanges of sexual activity for special treatment or to avoid discipline." *Id.* at 478. At

the same time, the Supreme Court has warned that "not . . . every malevolent touch by a prison

guard gives rise to a federal action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Rather, in contrast

to common tort law, the Eighth Amendment shields inmates from only those actions 'repugnant to

the conscience of mankind.'" *Id.* at 475-476 (quoting *Hudson*, 503 U.S. at 10). "The objective

element 'is therefore contextual and responsive to 'contemporary standards of decency.'" *Ricks*, 891 F.3d at 476 (citations omitted). "And 'conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.'" *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Colon's allegations fall short of satisfying the objective standard of the analysis. Colon acknowledges that Anglikowski's touching occurred during a routine body search that "commenced ... as per normal policy standards, starting with arms, chest, back and sides." ECF No. 38., ¶ 4(C). Caselaw confirms that Anglikowski's actions—placing his fingers and thumbs "within the area" of Colon's buttocks—during a body search are not severe enough to support an Eighth Amendment claim. In *McIntyre v. Kellinger*, 2018 WL 3429964, at *1 (3d Cir. 2018), the Court of Appeals for the Third Circuit held that allegations that a guard dragged his hands down an inmate's buttocks, gripped his buttocks, patted the inmate's thighs, and "squeezed [his] ass as if [the inmate] were a woman" during a pat-down search failed to state an Eighth Amendment claim. Similarly, in *Sarvey v. Wetzel*, 2019 WL 235322, at *13 (W.D. Pa. Jan. 16, 2019), this Court held that a corrections officer's striking of an inmate's buttocks with a ruler was not severe enough to support a cognizable Eighth Amendment claim.[3] Colon's alleged placing of his fingers and thumbs "within the area" of his

---

[3] *See also Ricks*, 891 F.3d at 479 (suggesting that an "isolated, momentary" incident in which guard "rubbed his erect penis against [plaintiff's] buttocks through both men's clothing" was not sufficiently severe); *Hughes v. Smith*, 237 Fed. Appx. 756, 759 (3d Cir. 2007) (no Eighth Amendment violation where correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (allegations that a female correction officer squeezed plaintiff's penis, said "[Y]ou know [you're] a sexy black devil, I like you," bumped into plaintiff with her breasts, and pinned him against the wall "with her whole body vagina against penis" were not sufficiently serious to amount to an Eighth Amendment violation); *Watson v. Wingard*, 2018 WL 2108316 (W.D. Pa. Jan. 31, 2018) (allegations that defendant gave plaintiff an "upper cut" to the groin with his forearm, "groped and massaged [his] penis," and examined plaintiff's "butt ... like a doctor" did not amount to sexual abuse); *Jackson v. Madery*, 158 Fed. Appx. 656, 661 (6th Cir. 2005) (holding that the plaintiff's allegations that a guard grabbed and rubbed his buttocks in a degrading manner during a shakedown in the food area was insufficient to establish an Eighth Amendment violation); *Pantusco v. Sorrell*, 2011 WL 2148392, at *7-8 (D.N.J. May 31, 2011) (defendant did not violate Eighth Amendment by groping plaintiff's genitals on a single occasion during a routine pat-search); *Harris v. Zappan*, 1999 WL 360203 (E.D. Pa. May 28, 1999) (allegations of one instance of sexually explicit comments combined with fondling and rubbing on thighs and breasts not sufficiently serious for an Eighth Amendment violation); *Jones v. Culinary Manager II*, 30 F. Supp.2d 491, 497 (E.D. Pa. 1998) (a single incident alleging that a guard pinned plaintiff and ground his pelvis against plaintiff's buttocks while threatening sex not sufficiently serious).

buttocks during a routine body search similarly is not "objectively, sufficiently intolerable and cruel, capable of causing harm," such that it satisfies the objective element of an Eighth Amendment claim.

As this Court has previously noted, "the standard for sexual assault is not zero tolerance for all minor sexualized touching in prison, such that all such claims are objectively serious to a constitutional degree." *Armstrong v. Diraimo*, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 28. 2018) (citing *Ricks*, 891 F.3d at 477). This holding in no way condones or trivializes Anglikowski's alleged behavior. But such behavior does not amount to a cognizable constitutional violation. *See Sarvey*, 2019 WL 235322, at *13

Likewise, Anglikowski's alleged comments to Colon after the May 18, 2018 body search also fail to support a constitutional claim. "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *McCain v. Williams*, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Anglikowski's alleged comments, while distasteful, do not amount to a constitutional violation. *See, e.g., Ledcke v. Pennsylvania Dept. of Corr.*, 655 Fed. Appx. 886, 888-89 (3d Cir. 2016) (detainee's "claims of verbal harassment fail[ed] as a matter of law"). Therefore, Colon's sexual assault and harassment claim against Anglikowski fails as a matter of law.

3. The Amended Complaint Fails to State a First Amendment Retaliation Claim Against Anglikowski.

Allegations in the Amended Complaint can be interpreted as an attempt to bring a claim of First Amendment retaliation against Anglikowski. Construed as such, the claim fails as a matter of law.

The Amended Complaint states that after Colon reported Anglikowski's actions on the PREA hotline, Anglikowski arrived at Colon's work assignment and told "CO Doxy" that Colon "keeps telling on me for f***ing with him," and that "he shouldn't be working the block because he works in the education building." ECF No. 38, ¶ 19(A)-(C). The Amended Complaint identifies Anglikowski's showing up at Colon's work assignment and at other places in the institution, including the prison yard, as acts of retaliation, and avers that these acts violated DOC policy designed to protect inmates who file PREA complaints.[4] *Id.*, ¶ 22. The Amended Complaint alleges no other incidents of retaliation by Anglikowski.

To establish a First Amendment retaliation claim, "an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action." *Mearin v. Swartz*, 951 F. Supp.2d 776, 786 (W.D. Pa. 2013) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). The inmate may show retaliatory motive by either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If retaliation is established, the burden then shifts to the defendant prison officials to "establish that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *Id.* (citing *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)).

---

[4] Colon relies upon 28 C.F.R. § 115.64(2)(1) as the source of Anglikowski's obligation not to approach or engage him. But that regulation does not appear to require a separation, but instead concerns the initial duties of first responders to an incident of alleged sexual abuse: "Staff first responder duties—Upon learning of an allegation that an inmate was sexually abused, the first security staff member to respond to the report shall be required to: (1) Separate the alleged victim and abuser: (2) Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence; ...." *See, e.g., James v. LaCroix*, 2017 WL 2602598, at *4 (W.D. La. Apr. 17, 2017), *report and recommendation adopted*, 2017 WL 2588570 (W.D. La. June 14, 2017).

Although the filing of a PREA complaint is a protected activity, Colon must also allege facts to support the "adverse action" element of his claim. An "adverse action" is one sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Huertas v. Sobina*, 476 Fed. Appx. 981, 984 (3d Cir. 2012). This is an objective inquiry. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). Colon alleges that after he filed his PREA Complaint, Anglikowski "continued to question" him and "attempted to provoke" Colon by "becoming argumentative over [Colon's] work schedule," ECF No. 38, ¶ 10, made "a specific inquiry into [Colon'] work schedule," *id.*, ¶ 14, and showed up in locations where Colon was present, in contravention of "PREA separation orders/policy," and looked at him from a distance while smiling. *Id.*, ¶¶ 30, 32. Colon does not allege that he lost his prison job as a result of filing the PREA complaint.[5] *See, e.g., Baez v. Mooney*, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

Anglikowski's alleged actions after the filing of the PREA complaint do not constitute "adverse actions" as that term is used in the context of a retaliation claim. While a "'campaign of harassment which though trivial in detail" may become "substantial in gross"' and rise to an adverse action, that is not what Colon has alleged in his Amended Complaint. *See, e.g., Yow v. Robertson*, 2021 WL 2400792, at *9 (M.D. Pa. June 11, 2021) (citing *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000). At best, the Amended Complaints alleges that Anglikowski verbally teased or harassed Colon. Such conduct does not constitute an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See, e.g., Marten v. Hunt*, 479 Fed. Appx. 436, 439

---

[5] Colon does plead that he met with a prison employment counselor "in hopes of finding a solution that may help avoid contact with Co. Anglikowski, including quitting his job and self-isolating in his assigned housing." ECF No. 38, ¶ 27. He also states that he "broke down in tears for fear of Anglikowski's manipulation and possible falsification of facts that could lead to his dismissal from work." *Id.*, ¶ 28. Nevertheless, Colon does not allege that Anglikowski caused him to lose his work assignment. Further, although Colon alleges that he was placed in "a more restrictive housing condition in the RHU that preceded a transfer to another SCI facility," *id.*, ¶68, he in no way attributes this placement to Anglikowski.

(3d Cir. 2012) (affirming dismissal of First Amendment retaliation claim because verbal threats are not sufficient to constitute an adverse action).

Thus, the Amended Complaint fails to allege facts to support a legally sufficient retaliation claim against Anglikowski.

### B. The Claims Against Remaining Defendants

#### 1. The Amended Complaint Fails to State an Eighth Amendment Claim Against DOC Secretary Wetzel.

The Defendants interpret Colon's Amended Complaint as asserting an Eighth Amendment deliberate indifference claim against Secretary Wetzel. This understanding likely comes from Colon's allegation that "Plaintiff fully and continually notified Secretary of Corrections John Wetzel of the ongoing mismanagement of his subordinate staff (recorded) yet he too failed to protect my 8th Amendment and Fifth Amendment rights to due process and freedom from cruel and unusual punisment (sic)." ECF No. 38, ¶86. The Amended Complaint also pleads that Wetzel violated the Eighth Amendment by failing "not only to respond in kind to my many notifications to him (all stamped); nor to remedy the problem, but to condone the ineffective response to my claims by his deliberate indifference to the retaliation I suffered that led to a more restrictive housing condition in the RHU that preceded a transfer to another SCI facility." *Id.*, ¶68. Finally, regarding Wetzel, the Amended Complaint alleges:

> Plaintiff avers that it is the statewide PREA coordinator's interpretation of this federal mandate that falls short and fails to hold accountable to the highest "best practice" standards, deserving of the citizens of this Commonwealth. Further the lack of enforcement of this "best practice" by appointed PREA compliance managers of the Pennsylvania Dept. of Correction facilities allows this state to fall behind in the quality of its corrections programs and is a direct reflection on the efforts of the Secretary of Corrections, Mr. John Wetzel.

*Id.*, ¶68. The foregoing are the Amended Complaint's only allegations against Defendant Wetzel.

Because Colon has failed to allege facts to support a constitutional violation on the part of Anglikowski, any claim of supervisory liability or "failure to protect" claim against Wetzel based on Anglikowski's conduct likewise fails as a matter of law. *See Martin v. City of Reading*, 118 F. Supp. 3d 751, 773 (E.D. Pa. 2015) ("a plaintiff may prevail on a supervisory liability claim only if the plaintiff can establish a causal link between the allegedly defective supervision and the *constitutional violation*") (emphasis supplied).

Further, even if Colon had alleged facts to support a constitutional claim against Anglikowski, his claim against Wetzel would still fail. Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct. *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997); *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable)). When proceeding under § 1983, as Colon is doing here, a plaintiff cannot prevail unless he can demonstrate that the defendant played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply to supervisory officials such as Secretary Wetzel. *See, e.g., Rode*, 845 F.2d at 1207 (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is

inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Here, Colon's claim against Secretary Wetzel is based solely on allegations that certain actions (or inactions) of PREA compliance managers are a "direct reflection" on the Secretary and Secretary Wetzel failed to respond to Colon's letters; and a boilerplate assertion that Wetzel "failed to protect my 8th Amendment and 5th Amendment rights." ECF No. 38, ¶¶ 62, 68, and 86. None of these allegations is sufficient to support an Eighth Amendment deliberate indifference claim against Wetzel. First, Colon's allegation that a subordinate's actions are a "direct reflection" on the Secretary, by definition, is not an allegation of personal involvement but rather a consequence of another's actions. Second, the allegation that Wetzel failed to respond to Colon's correspondence represents a failure to react to a subsequent complaint about misconduct, not personal involvement in the misconduct itself. *See, e.g., Alexander v. Fritch*, 2010 WL 1257709, *15-16 (W.D. Pa. Mar. 26, 2010). Finally, Colon's vague and conclusory averment that Defendant Wetzel violated his constitutional rights does not sustain a claim because it is unsupported by factual allegations. *See,*

*e.g., Iqbal*, 556 U.S. at 676; *Robinson*, 120 F.3d at 1293-95. Colon's Amended Complaint includes no factual allegations suggesting that Secretary Wetzel's participated in any constitutional violation or his adoption of a policy or custom that was the moving force behind any constitutional violation. In the absence of such allegations, Colon's Amended Complaint fails to state a claim under § 1983 against Secretary Wetzel. *See, e.g., Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and ... failed to help him" is insufficient to state a claim for relief); *Anson v. United States*, 2020 WL 2425780, at *4 (W.D. Pa. Apr. 6, 2020) (dismissing supervisory claims against federal prison warden for lack of personal involvement). Accordingly, Colon's claims against Wetzel will be dismissed.

> 2. The Amended Complaint Fails to State a Claim Against Defendants Hawkinberry and Capozza.

The Amended Complaint's factual allegations concerning Defendants Hawkinberry and Capozza are similarly sparce. For example, Colon claims that he notified Hawkinberry "of the undeserved ISP status placed by staff, its removal, the H-Code reason change as she is appointed the PREA Compliance mgr at SCI-Fayette on 4-30-19." ECF No. 38, ¶ 80. He claims she violated his rights under the Eighth Amendment by failing to investigate the "sexually related motivation for my custody level increase." *Id.*, ¶ 83. In other words, Colon claims that Hawkinberry violated his Eighth Amendment rights by failing to investigate Colon's ISP status, which was imposed by other prisoner staff members, not Hawkinberry. Construing this claim as one premised on Hawkinberry's supervisory role over other prison staff members, it must be dismissed. *See, e.g., Pearson v. Sweeney*, 2021 WL 615072, *2 (D.N.J. Feb. 16, 2021) (construing failure to investigate claim as premised on defendant's supervisory role).

As noted, supervisory liability under 42 U.S.C. § 1983 must be supported by factual allegations that the supervisor "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or the supervisor "participated in violating plaintiff's

rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (second alteration in original). Here, Colon has not alleged the existence of a policy or custom maintained by Hawkinberry that caused him to suffer a constitutional injury. Colon has not even alleged facts to support that Hawkinberry participated or acquiesced in the misclassification of his custody level. His Amended Complaint fails to state a constitutional claim against her.

The same is true for Colon's allegations against Defendant Capozza. The Amended Complaint alleges only that "after (stamped) notification, Warden Capozza failed to rectify or even investigate his subordinate's behavior." ECF No. 38, ¶ 84. Here, Colon explicitly bases Capozza's liability on his role as a supervisor and without any allegations of his direct involvement in actionable conduct. "An allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 Fed. Appx. 378, 383 (3d Cir. 2003) (quotations omitted). Accordingly, Colon cannot state a claim against Capozza based on his failure to investigate after Colon complained. *See, e.g., Gilmore v. Lamaz*, 2020 WL 703655, *6 (E.D. Pa. Feb. 11, 2020).

      3.    The Amended Complaint Fails to State a Claim Against Defendant Nagy

According to the Amended Complaint, Defendant Nagy is an intake counselor for B-Block at SCI-Fayette. ECF No. 38, ¶ 69. Colon alleges that Nagy acted with deliberate indifference when she removed his "low celling status" and "removed my work privilege and implaced (sic) an H-code" without first conducting a "proper investigation." *Id.* These allegations fail to state a claim against Nagy.

First, as to Colon's claim that Nagy gave him a less than desirable housing code, this Court recently explained:

It is well-established that there is no constitutional right for an inmate to be celled in a particular place, or under particular circumstances. "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 39-40 (2002); *Podhorn v. Grondolsky*, 350 Fed. Appx. 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program."). Rather, "the prison has a penological interest in the housing placement of its inmates and '[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise.' ") *Thomaston v. Meyer*, 519 Fed. Appx. 118, 119 (3d Cir. 2013) (quoting *McKune*, 536 U.S. at 39).

*Washington v. Barnhart, et al.*, 2021 WL 2342924, at *12 (W.D. Pa. May 14, 2021), *report and recommendation adopted sub nom. Washington v. Barnhart*, 2021 WL 2339281 (W.D. Pa. June 8, 2021).[6]

Nor does Colon possess any constitutional right to a specific education or work program while incarcerated. *See, e.g., Garcia v. Kimmel*, 2009 WL 2950628, *12 (W.D. Pa. Sept. 9, 2009) (citing *Savage v. Kerestes*, 2009 WL 1585807, *2 (M.D. Pa. June 3, 2009) ("The right to earn wages while incarcerated is a privilege, not a constitutionally protected right."). The same is true for Nagy's placing a restrictive "H-Code" on Colon. *See Padilla v. Beard, et al.*, 2006 WL 1410079, *7 (M.D. Pa. May 18, 2006) (dismissing claim that placement of an "H-Code" violated plaintiff's constitutional rights because there is no constitutional right to a prison job). Thus, Colon's claim that Nagy violated his constitutional rights by changing his custody level and assigning him an "H-Code" must be dismissed.

Finally, the Amended Complaint includes no allegation that Nagy's removal of Colon's "low celling status," loss of his "work privilege," or placement on "H-code" status was retaliatory based on the filing of his PREA complaint or any protected conduct. Even if such a claim had been raised, it would fail because the facts alleged do not support a causal connection between any protect

---

[6] Moreover, Pennsylvania law clearly states that an inmate does not have a right to be housed in a particular facility. *See* 37 Pa. Code Ann. § 93.11(a).

conduct and Nagy's actions. No unusually suggestive temporal proximity between protected activity and Nagy's actions is alleged; no pattern of antagonism coupled with timing exists to suggests a causal link. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

4. The Amended Complaint Fails to State a Claim Against Defendants Riddle, Knepper, and Erickson.

Like the allegations against Nagy, the Amended Complaint alleges that Defendant Riddle (Nagy's supervisory on B-Block) approved "trumped up accusations" that resulted in the change in Colon's ISP status. ECF No. 38, ¶72. Colon further alleges that, when he submitted a "Request to Staff," asking Riddle about these changes, Riddle responded that the change in his status was approved by "a general consensus," which included the views of Defendants Erickson and Knepper. *Id.*, ¶74. As with Nagy, the Amended Complaint alleges that Riddle, Erickson, and Knepper violated his constitutional rights by changing his custody level and assigning him an "H-Code," which rendered him ineligible for a prison job. *Id.*, ¶77. And, as against Nagy, the allegations also fail to state an Eighth Amendment deliberate indifference claim against Riddle, Erickson, and Knepper. As noted above, Colon possesses no constitutional right to a specific education or work program while incarcerated. *See, e.g., Garcia*, 2009 WL 2950628, at *12 (citation omitted). The same holds true for these Defendants' actions relating to the placement of a restrictive "H-Code" on Colon. *See Padilla*, 2006 WL 1410079, at *7 (dismissing claim that placement of an "H-Code" violated plaintiff's constitutional rights because there is no constitutional right to a prison job). Therefore, the Court will also dismiss these claims.

5. The Amended Complaint Fails to State a Claim Against Defendant Clark.

Colon's claim against Defendant Clark, the Superintendent at SCI-Albion, is based on allegations that he

> failed to insure that the facility of Albion SCI had a
> properly trained candidate to assume the
> role/responsibility of PREA Compliance Mgr. and

> also failed to hold that appointed (sic) to the highest
> "best practice" standards afforded the inmates,
> employees, contractors, and volunteers by the Pa.
> State coordination mandate of meeting the
> NATIONAL STANDARD set by the FEDERAL
> ACT.

ECF No. 38, ¶ 64. He faults Clark for "fail[ing] to hold those under his supervision to adhere to the

higher 'best practice' standards, thus creating a culture of deliberate indifference." *Id.*, ¶ 67. These

allegations represent yet another factually unsupported supervisory liability claim.

The Amended Complaint does not allege any facts to support an inference that Warden

Clark was ever made aware of Colon's interaction with Anglikowski or had contemporaneous

knowledge of his alleged misconduct. *See Wehrli v. Allegheny Cty.*, 2017 WL 1233619, at *8 (W.D. Pa.

Apr. 4, 2017) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). The Amended Complaint

does not support that Clark established a policy, custom, or practice that caused constitutional harm

to Colon or that Clark personally participated in any constitutional violation. *See Barkes v. First Corr.*

*Med., Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2017), *overturned on other grounds, Taylor v. Barkes*, 135 S. Ct.

2042 (2015). Given these deficiencies, and the absence of any viable constitutional claim against any

subordinate of Superintendent Clark, the claim against him must be dismissed.

6.    The Amended Complaint Fails to State a Claim Against Defendants Bashor
      and Radziewicz.

The Amended Complaint lists several ways that Defendant Bashor "failed to fulfill her

responsibilities." ECF No. 38, ¶ 48. Specifically, Colon claims Bashor failed to prevent

Anglikowski's "ongoing sexual harassment and retaliation that followed." *Id.* Further, Bashor is

alleged not to have informed  the Deputy Superintendent, who had an obligation to meet with

Anglikowski; failed to "continually monitor" Anglikowski, ignored regulations that required Bashor

to monitor him for ninety-days; failed to order mental health services for Colon; failed to ensure the

proper collection of evidence; and failed to recognize that Colon's PREA complaint "contributed to

this abuse/harassment by enabling the same." *See id.*, ¶¶ 49-54. Finally, the Amended Complaint alleges that Bashor failed "to perform as designated PREA Compliance Mgr." by accepting the "findings and assumptions" that resulted from the Pennsylvania State Police's determination that there was a "lack of evidence" to support his PREA complaint. *Id.*, ¶ 55. All of the foregoing allegations are based on Bashor's failure to respond properly to Anglikowski's alleged misconduct. Because the Court has determined that Anglikowski's alleged conduct does not rise to the level of a constitutional violation, Colon's claims against Bashor based her failure to supervise or train Anglikowski or failure to protect Colon also fail.

The claims against State PREA coordinator David Radziewicz will also dismissed. Briefly, Colon alleges that Radziewicz failed to "fulfill his responsibility to investigate the less than best practice behavior of both SCI Albion and SCI Fayette compliance managers Lt. Bashor and Debra Hawkenberry." ECF No. 38, ¶ 85. As explained, liability cannot be imposed under § 1983 by respondeat superior. Here, however, Colon faults Radziewicz for failing to investigate the actions of his subordinates. In essence, this a "failure to supervise" claim.

"'Failure to' claims" such as "failure to train, failure to discipline, or ... failure to supervise, are considered to be a subcategory of policy or practice liability." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 192 L.Ed.2d 78 (2015). As described in *Barkes, supra.*, the existence of a policy or practice is insufficient to plead supervisory liability absent allegations that the official was aware that the policy or practice created an unreasonable risk of a constitutional injury, and the official was indifferent to that risk. The Amended Complaint makes no such allegations. And further, Colon does not identify a particular policy beyond "best practices" that Radziewicz failed to follow. To the extend this claim implicates the DOC's PREA policies, Colon does not allege that Radziewicz ever reviewed Colon's PREA complaint. *See, e.g., Skelton v. New Jersey Dep't of Corr.*, 2020 WL 6376652, at

*8 (D.N.J. Oct. 30, 2020). Instead, all that he has alleged is that this Defendant failed to investigate what Colon believes is the subpar work performance of Defendants Bashor and Hawkenberry, including their failure to follow "best practices," which he fails to delineate. Thus, Colon has failed to plead a claim of supervisory liability against Radziewicz.

7.    The Amended Complaint Fails to State a Conspiracy Claim Against Any Defendant.

Paragraph 88 of the Amended Complaint appears to raise a claim of conspiracy against all Defendants ("Anglikowski, et al. acted in accord with one objective . . ."). ECF No. 38, ¶ 88. Colon contends that the Defendants conspired to "maintain this plaintiff's condition and status." *Id.* This claim will be dismissed.

"To demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 Fed. Appx. 666, 670 (3d Cir.2012) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)). "It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Perez v. Gamez*, 2013 WL 6073877, at *9 (M.D. Pa. Nov.18, 2013). Rather, Colon must show that the Defendants acted in concert with the specific intent to violate his rights. *Davis v. Fox*, 2013 WL 5656125, at *5 (M.D. Pa. Oct.15, 2013). Further, a "conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 Fed. Appx. 234, 239 (3d Cir. 2011).

Here, Colon has not alleged facts to support the "agreement" element of a conspiracy claim. "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). Colon offers

only vague allegations the Defendants acted "in accord" to deprive him of his rights. Because Colon has not alleged facts to support a reasonable inference that the Defendants agreed to deprive him of his constitutional rights, his conspiracy claim must be dismissed.

IV.     Further Amendment.

Having determined that the Amended Complaint fails to state a claim against any defendant, the Court must now determine whether further amendment of that pleading would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile"). At the outset, the Court notes that Colon has already been given an opportunity to amend his pleading following the granting of the Defendants' Motion for A More Definite Statement. ECF No. 32. *See also Reed v. Chambersburg Area Sch. Dist. Found.*, 2014 WL 1028405, at *15 (M.D. Pa. Mar. 17, 2014) (where a plaintiff has already once been granted leave to amend, and has been given ample time to assemble the first amended complaint, but has again failed to sufficiently state a claim, a district court need not grant Plaintiff subsequent leave to amend). The Court further notes that its Opinion and Order granting Defendants' Motion for A More Definite Statement pointed out the deficiencies in Colon's original Complaint and gave him instructions regarding what he needed to do to cure those deficiencies. ECF No. 32. Those instructions included the following:

> Plaintiff must provide a description of how each defendant violated his rights. Plaintiff must show personal involvement in the alleged wrongdoing by each defendant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs"). Wherever possible, this description should include references to relevant dates, times, and locations. It should explain to the Court what happened by specifically describing each defendant's behavior or action and how that behavior or action – or lack of action – resulted in the alleged violations. ... Plaintiff should be specific about the particulars

> of the event, each defendant's misconduct, and how such misconduct resulted in a violation or denial of the civil right at issue.

*Id.*

Based on the nature of the deficiencies in the Amended Complaint, the Court finds that any further attempt to amend as to any defendant would be futile. In his original Complaint and his Amended Complaint, Colon described in detail the conduct upon which he based his claims against Anglikowski. As discussed above, caselaw makes clear that this alleged conduct does not constitute a violation of the Eighth Amendment or the First Amendment. Further amendment cannot alter this outcome. To the extent Colon is pursuing theories of supervisory liability and a "failure to protect" claim against the other defendants, the absence of a viable constitutional claim against Anglikowski renders amendment as to the other defendants futile. Further, the roles of the other defendants, as identified by Colon, do not support a viable claim against them. Finally, the facts alleged in the Amended Complaint establish the absence of any reasonable basis for a retaliation or any other claim against any of the defendants. Therefore, amendment as to these claims is also futile. Accordingly, this action will be dismissed, with prejudice.

A separate Order follows this Memorandum.

Entered this 8th day of July, 2021.

Richard A. Lanzillo
United States Magistrate Judge